COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Benton, Coleman, Willis,
        Elder, Bray, Annunziata, Bumgardner, Lemons and
        Senior Judge Overton[*]
Argued at Richmond, Virginia


ENRIQUE ANDRES SILBERBLATT

                                  MEMORANDUM OPINION[**] BY
v.    Record No. 1793-97-3      JUDGE RUDOLPH BUMGARDNER, III
                                    JULY 13, 1999

LORI ANN SILBERBLATT


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

    Cheryl Watson Smith (G. Marshall Mundy;
    Mundy, Rogers & Frith, L.L.P., on briefs),
    for appellant.

    Terry N. Grimes (King, Fulghum, Snead,
    Nixon & Grimes, P.C., on brief), for
    appellee.


Enrique Andres Silberblatt and Lori Ann Silberblatt both

appealed a June 27, 1997 equitable distribution award. A panel

of this Court affirmed the trial court's award. We granted a

rehearing en banc to consider three issues raised by the

---

[*]Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

[**]Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

husband. Because the other issues are not raised on this rehearing, the decision of the panel, as stated in its memorandum opinion dated August 11, 1998, is affirmed. Here, we consider the trial court's decision to classify husband's medical practice as marital property, to classify gifts to his wife as separate property, and not to impute income to his wife. We hold that the trial court erred in classifying the property and improperly refused to impute income. Accordingly, we reverse and remand for reconsideration.

It is within the trial court's discretion to fashion equitable distribution decrees. See Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).

Enrique and Lori Silberblatt met in Birmingham, Alabama where the husband was completing a fellowship in hand surgery, and she was working as a nurse pursuing her nursing degree. The couple started dating in February 1985, and he moved to Roanoke to complete his residency training. In September 1987, the husband began plans to open a private medical practice. He opened the practice and began accepting patients in January 1988. The husband formed the practice as a professional corporation and titled it in his name alone. It became successful quickly and earned gross receipts of $438,000 the first year. The largest portion of the receipts was earned before the parties married in November 1988.

Before the marriage, the wife helped the husband establish his practice by sending him sample forms and documents that she acquired from the Alabama practice for which she worked. After the marriage, she worked for one year at the husband's new practice. She received a salary for working as a nurse and office manager. After the first year, she worked part-time but no longer received a salary. The wife testified that the fair value of the services she performed was $15,000 per year for five years, or $75,000. It was the husband's routine to withdraw all retained earnings not necessary for operation of the business at the end of the year. The marital estate received all of the profits distributed from the business.

## I. CLASSIFICATION OF MEDICAL PRACTICE

The husband argues that the trial court erred when it classified his medical practice as marital property. He argues that since he acquired the practice before the marriage it was separate property. We agree. Code § 20-107.3(A)(1)(i) provides that "all property, real and personal, acquired by either party before the marriage" is separate property. "Marital property is . . . property acquired by each party during the marriage which is not separate property as defined above." Code § 20-107.3(A)(2). The husband's practice opened in January 1988, and the parties did not marry until November of that year. By statute, the practice is separate property. The trial court

- 3 -

erred in classifying the medical practice as marital property and including it in the marital estate.

Under certain circumstances, separate property can become marital property. This occurs when the separate property is commingled with marital property or the non-owning spouse makes contributions that enhance the property's value. See Code § 20-107.3(A)(3)(a); Gottlieb v. Gottlieb, 19 Va. App. 77, 98, 448 S.E.2d 666, 674 (1994); Barnes v. Barnes, 16 Va. App. 98, 104-05, 428 S.E.2d 294, 299 (1993). The non-owning spouse bears the burden of proof. See Code § 20-107.3(A)(3)(a). However, there was no evidence that the wife's contributions were "significant and result[ed] in substantial appreciation of the separate property," and there was no retracing of commingled marital funds. Id. Indeed, the husband's expert, who provided the only evidence of value, testified that the property decreased in value during the marriage. At the end of 1988, it was valued at $192,000 and at the time of divorce, its value was $165,000.

II. CLASSIFICATION OF INTERSPOUSAL GIFTS

Next, we consider whether the trial court erred in classifying interspousal gifts as separate property. The gifts include furs and jewelry, which the husband gave the wife during the course of the marriage. Interspousal gifts do not fall within the scope of Code § 20-107.3(A)(1), which defines separate property, and remain presumptively marital.

- 4 -

"'[W]hether the property is separate or marital is determined by the statutory definition and is not determined by legal title.'" Lightburn v. Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996) (quoting Garland v. Garland, 12 Va. App. 192, 195, 403 S.E.2d 4, 6 (1991)).

Code § 20-107.3(A)(1) and (2)(iii) governs this issue. Subsection (A)(1) expressly excludes from the definition of separate property gifts from "the other party." Thus, the legislature expressly provided that interspousal gifts be marital property. See Theismann v. Theismann, 22 Va. App. 557, 471 S.E.2d 809, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). We conclude that the trial court erred in classifying the gifts as separate property.

Annunziata, J., with whom Fitzpatrick, C.J., Benton, Coleman, Elder, Bray, and Lemons, JJ., join, concurring.

### III.  IMPUTATION OF INCOME TO WIFE

The trial court's decision to not impute income will be upheld on appeal unless it is "plainly wrong or unsupported by the evidence." Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995).

Both parents owe a duty of support to their minor children. See Code § 20-61; Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994). "A custodial parent has no less responsibility to provide support to a minor child than does the noncustodial parent." Bennett v. Dept. of Social Servs., Div. of Child Support Enforcement, 22 Va. App. 684, 692, 472 S.E.2d 668, 672 (1996). Under prior binding case law, it is clear that parents "cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support." Kelley, 248 Va. at 295, 449 S.E.2d at 56.

The parties' agreement that wife would remain unemployed outside the home cannot substitute for the trial court's analysis of the factors that must be considered when determining child support and the parties' respective obligations for its payment. See Code § 20-108.1. The trial court's decision on this ground is plainly wrong.

- 6 -

Furthermore, the evidence fails to support the factual finding that income need not be imputed to the wife. The trial court has discretion to impute income to either or both the custodial and noncustodial parent who is voluntarily unemployed, provided that the court may not impute income to the custodial parent except when the child is in school or child care services are available. See Code § 20-108.1(B)(3); Bennett, 22 Va. App. at 691, 472 S.E.2d at 672. Here, the evidence shows that both children are in pre-school two days per week, each child spending a third day in pre-school while the other remains at home. The evidence also shows that wife was prepared to return to school full-time to obtain a law degree and that, but for her failure to timely submit an application for admission, she would be a full-time student upon acceptance. It follows that neither the age of the children nor any other circumstances presented an obstacle to wife's gainful employment.

The court also failed to consider evidence of wife's earning capacity. See Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (finding that a trial court may consider earning capacity as well as actual earnings in imputing income and fashioning an award of support as long as it applies "'the circumstances in existence at the time of the award.'" (quoting Payne v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987))). The evidence shows that wife was capable of earning $18 per hour as a trained surgical nurse and

that she had recent job experience as a nurse and office manager, having worked in husband's office from 1988 to 1996. Wife testified that, while she was not paid actual wages by her husband, the value of her part-time services had she been earning a normal hourly rate for a surgical nurse was $15,000 per year. Furthermore, at the time of the hearing, wife was employed as a nurse several days a month, earning $18 per hour. See Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) ("[A] trial court may impute income based on evidence of recent past earnings.").

Accordingly, we find that the trial court abused its discretion when it declined to impute income to the mother, citing the parties' agreement that wife would be a full-time mother. Not only is the parties' agreement relieving wife of her obligation to provide support to the parties' minor children immaterial, the court's consideration of its terms as binding on its determination of support resulted in its failure to fully consider all the evidence in support of imputation and its failure to impute income as supported by the evidence in this case. See Hiner v. Hadeed, 15 Va. App. 575, 578, 425 S.E.2d 811, 813 (1993) ("In any judicial proceeding to determine child support, the court must consider all relevant evidence concerning the needs of the child and the ability of the parents to provide for those needs.").

For the foregoing reasons, we hold that the medical practice is separate property, the gifts to the wife are marital property, and the trial court erred in refusing to impute income to the wife. Accordingly, we reverse the trial court's decision with respect to the issues raised herein and remand for reconsideration in accordance with this opinion.

<u>Reversed and remanded.</u>

Bumgardner, J., with whom Willis, and Overton, JJ., join, dissenting, in part.

I respectfully dissent from the majority's reversal of the trial court's decision not to impute income. "A trial court has discretion to impute income to [a party] who is voluntarily unemployed." Bennett v. Dep't of Social Serv., Div. of Child Support Enforcement, 22 Va. App. 684, 691, 472 S.E.2d 668, 672 (1996). See Code § 20-108.1(B)(3).

On appeal, the evidence is viewed in the light most favorable to the wife, the prevailing party below. See Cook v. Cook, 18 Va. App. 726, 731, 446 S.E.2d 894, 896 (1994). It established that the children were in pre-school three days per week, and the wife admitted that employment opportunities were available. The trial court refused to impute income finding that "it was the established agreement of the parties that wife would be a full-time mother" and that she was fulfilling that role as she had when the couple was still married.

The decision not to impute income "will be upheld on appeal unless it is plainly wrong or unsupported by the evidence." Bennett, 22 Va. App. at 691-92, 472 S.E.2d at 672. The evidence supports the finding that the parties had an understanding that the wife would raise the children and not work outside the home while they were very young. When first married, the wife had worked in the medical practice, but she was a full-time mother and did not work regularly outside the home once the couple

- 10 -

began having children.  Given the age of the children and the parties' understanding, I would affirm the trial court's decision not to impute income to the wife.

# COURT OF APPEALS OF VIRGINIA

Present: Judges Bray, Overton and Bumgardner
Argued by teleconference

ENRIQUE ANDRES SILBERBLATT

v.    Record No. 1793-97-3

LORI ANN SILBERBLATT

MEMORANDUM OPINION* BY
JUDGE RUDOLPH BUMGARDNER, III
AUGUST 11, 1998

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

Cheryl Watson Smith (G. Marshall Mundy;
Mundy, Rogers & Frith, L.L.P., on briefs),
for appellant.

Terry N. Grimes (King, Fulghum, Snead,
Nixon & Grimes, P.C., on brief), for
appellee.

The trial court granted a final decree of divorce June 27,
1997 and decreed equitable distribution of the marital estate.
The husband appealed on six specific grounds, five of which
assert error in classification or valuation of various items of
property. The husband also appealed the action of the trial
court in increasing the award of permanent support because the
husband was not expected to pay the lump sum award during the
pendency of this appeal. The wife appealed arguing the trial
court improperly considered proceeds she received from the sale
of the marital home when decreeing equitable distribution and
erred in not awarding her attorney's fees.

---

*Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

The trial court has sound discretion to make equitable distribution determinations, and its decisions will not be disturbed on appeal unless plainly wrong or unsupported by the evidence. See McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); McClanahan v. McClanahan, 19 Va. App. 399, 401, 451 S.E.2d 691, 692 (1994). "The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988). See Gamble v. Gamble, 14 Va. App. 558, 570, 421 S.E.2d 635, 642 (1992).

Enrique and Lori Silberblatt were married on November 19, 1988. They had met in Birmingham, Alabama where the husband was completing a fellowship in hand surgery and the wife was working as a nurse. The couple started dating in February 1985. Before the marriage, the husband was engaged in starting up his own plastic surgery practice in Roanoke, Virginia. Preparations to establish the practice began in September 1987, and the practice began accepting patients in January 1988. The practice was formed as a professional corporation and titled in the husband's name alone. It was quickly successful earning gross receipts of $438,000 in the first year of its existence. The largest part of the receipts was earned before the parties were married.

Before the marriage, the wife helped the husband to establish his practice by sending him sample forms and documents which she acquired from the practice in Alabama where she worked. After the marriage, she worked for one year at the husband's new

- 2 -

practice. She performed duties as a nurse and office manager and received a salary. After the first year, she worked part-time but no longer received a salary. The wife testified that the fair value of the services she performed was $15,000 per year for five years, or $75,000. It was the husband's routine to withdraw all retained earnings not necessary for operation of the business at the end of the year. Thus, the marital estate received all of the distributable profits from the business.

The husband's main objection to the decisions of the trial court was that it included the value of his medical practice in the calculations of the marital estate. Husband contends that the trial court abused its discretion in classifying his medical practice as marital property. He argues that the practice was acquired before the marriage and thus was separate property. See Code § 20-107.3(A)(1)(a). He argues that the only evidence of the value of the practice at the time of the marriage was the opinion of his expert who said the practice was worth $192,000 at the end of 1988. The husband argues the wife could not have acquired any marital interest in the practice because the value at the time of divorce was only $165,000. Since the practice was worth more at the time of marriage than at the time of divorce, she could not claim to have contributed to an increase in the value of separate property by making substantial contributions during marriage which increased the value. Simply, because there was no increase in value after the marriage, there was no increase for her to claim. This argument depends on limiting

- 3 -

consideration of the wife's efforts toward establishing and building the husband's professional practice to those efforts made after their marriage. It further is based on the assumption that the entire present value of his private medical practice was accomplished solely during the first eleven months he opened his practice and nothing was attributable to the next eight years of operation.

The trial court found that the wife significantly contributed to the development of the medical practice. The contributions began during their engagement before the practice was opened. The wife was a registered nurse and worked in the same field in which the husband was specializing. The trial court was not limited to looking at the relationship of the parties to building the family business after the marriage ceremony. "Nothing in Code § 20-107.3 limits consideration of the various subsection (E) factors to the time frame of the marriage." See Floyd v. Floyd, 17 Va. App. 222, 227, 436 S.E.2d 457, 460 (1993). "To disregard the parties' contributions to the acquisition and maintenance of the property and how and when they acquired rights and equities in the property - whether pre- or post-marital - is to disregard the mandate of the statute." Id. (emphasis added). If there are significant contributions to a business before a marriage, failure to consider these contributions would create a windfall for the husband. See id. at 226-27, 436 S.E.2d at 460. Non-monetary contributions are considered along with monetary ones. See Code § 20-107.1(6);

- 4 -

L.C.S. v. S.A.S., 19 Va. App. 709, 721, 453 S.E.2d 580, 586 (1995), cert. denied, 517 U.S. 1124 (1996). Further, "legal title . . . has little or no bearing upon how [marital wealth] . . . is to be equitably distributed by a monetary award under Code § 20-107.3." Lightburn v. Lightburn, 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (1996). See Garland v. Garland, 12 Va. App. 192, 195, 403 S.E.2d 4, 6 (1991).

In reviewing an equitable distribution, we must consider the couple's relationship, their interests in the "family business," and their respective contributions to it. In this case, the practice was never exclusively the husband's. During their engagement, they worked together to open the husband's private practice. After it was opened, they worked together; he as the doctor, she as his nurse and office manager. This continued until they began their family. As the trial court found, she was very much a "junior partner" in helping him establish his practice.

With her assistance he was able to network professionally with other surgeons, to develop the necessary forms and procedures to operate the practice, and to benefit from her personal experience in a similar, established office. Not only did she work in the medical office and assist in maintaining the business, she also traveled with the husband, continued her own nursing education in his field of expertise, served as host to his associates, and took care of both their home and children. We find that the trial court properly determined that the

contributions the wife made to the medical practice, both before and during the marriage, were significant. See Gottlieb v. Gottlieb, 19 Va. App. 77, 91-92, 448 S.E.2d 666, 674-75 (1994); Barnes v. Barnes, 16 Va. App. 98, 104-05, 428 S.E.2d 294, 299 (1993).

Because the trial court was not limited to looking at her contributions after the date of the marriage, it could look at the entire history of the business, beginning when it first opened and had generated no value. The wife's efforts began before the practice opened, and the court found that she made significant contributions to it during the first year. The court could find that the entire value of the medical practice was marital property. Therefore, we find that the trial court did not err in classifying the practice as marital property and including its entire value in its calculations of equitable distribution.

The husband also objects to the court's determination that the value of the business is $160,000 and complains that the court improperly used a factor called "sweat equity" in making its valuation. Both parties had an accountant testify to the value of the medical practice. Both experts acknowledged that valuing an individual private professional practice was difficult. The husband's expert set the value at $147,000 while the wife's expert set it at between $150,000 and $200,000. There was not a great deal of evidence presented as to the method of evaluating the practice. Basically both experts adjusted the

depreciation allowed on the personal property and discounted the face value of the receivables.

Neither expert assigned any value for goodwill. Both experts agreed that the income of the practice is less than the statistical norm for this type of practice. The husband testified that he was receiving reduced reimbursement from health insurers, Medicare and Medicaid, that HMOs were increasingly unwilling to pay for elective surgery, and that concern over adverse side effects of breast implants caused a significant reduction in this area of the practice. A review of the practice's gross receipts also shows that receipts have been declining in recent years. The wife disputed the weight of some of these factors, but she was unable to offer any other explanation why the earnings of the practice were less than average. The wife alleged that the husband was voluntarily underemployed, but the downward trend in income began in 1992, long before divorce was on the horizon.

The values assigned to the practice by the experts were not substantially different. The primary difference was that the wife's expert felt that the true value must reflect some additional value greater than simply valuing equipment and receivables. During cross-examination, counsel characterized the component as "sweat equity." The term was used to label the opinion that there was additional value in this business because it was an established professional practice. When the trial court referred to "sweat equity," it was not introducing a new

factor into the evaluation process. It merely referred to the term when explaining why it placed greater weight on the opinion of the wife's expert than that of the husband's expert. The finding that the medical practice was worth $165,000 fell within the range of values presented by the two experts. We cannot say that this was an abuse of discretion. "Where experts offer conflicting testimony, it is within the discretion of the trial court to select either opinion." Rowe v. Rowe, 24 Va. App. 123, 140, 480 S.E.2d 760, 768 (1997).

The husband also contends that the court erred in classifying interspousal gifts as separate property in violation of Code § 20-107.3. A gift from one spouse to the other will be the separate property of the donee if (1) the donor has the intention to make the gift, (2) the gift is delivered or transferred, and (3) the donee accepts the gift. See Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). The gifts in question are anniversary presents, furs and jewelry. The evidence supports the finding that they were completed gifts intended to be the property of the wife. These gifts were "as complete and irrevocable as the ring given at the marriage ceremony and, like that ring, . . ., [they] may not be reclaimed in a divorce proceeding." McClanahan, 19 Va. App. at 405, 451 S.E.2d at 694. We find the court did not abuse its discretion in classifying the gifts as separate property of the wife.

Windsor House is the name of the building where the husband conducted his medical practice. Title was vested in a corporation named Windsor House, Inc. The husband complains that the court erred in not reducing the net value of this property by $16,714 which was owed by the corporation to him individually. The note was payable to the husband and was classified a marital asset and included in the marital estate. The husband argues that it should also have been deducted from the net value of the building. There was little evidence presented about the corporate structure or financial condition of this entity. It is only assumed that the husband was the sole stockholder. The only evidence of the value of the corporation was the testimony of the husband concerning the value of the building. He stated he had bought the property for $165,000 and had spent $235,000 on improvements. He indicated that he did not know what it was really worth but did state that he would not sell it for $400,000. The trial court valued the business property at $400,000 offset by the mortgage on the property, which left a value of $58,158.

On the basis of the limited evidence of the full financial condition of the corporation, the trial court accepted the evidence of value that was available and offset the debt against the property. To have ruled any further on the net worth of the corporation as an entity would have been speculation. There was no evidence of the other assets and liabilities. The evidence does support the finding that the corporation's value was the

value of the building. The mortgage indebtedness was deducted from that, and the net difference of $58,158 was included as a marital asset.

The value of the note owed to the husband by the corporation was included as a marital asset. As the trial court noted, the corporation was a separate entity and liable for payment of the note to the husband. The husband could have presented clearer and more complete evidence of the corporation, and the trial court could then have determined net worth of the corporation according to accounting procedures. Since the trial court had to make its decision on the evidence as presented, we find that the record supports the decision and the trial court did not err.

The husband contends that the court erred in declining to impute income to the wife. He argues that income should have been imputed to her on at least a part-time basis. The children were in pre-school three days per week, and the wife admitted that employment opportunities were available. The trial court refused to impute income finding that "it was the established agreement of the parties that wife would be a full-time mother" and that she was fulfilling that role as she had when the couple was still married. The court recognized her desire to be a homemaker. A "trial court shall impute income to a custodial parent who is voluntarily unemployed or underemployed where the age of the child and circumstances permit the custodial parent to be gainfully employed." Bennett v. Dep't of Social Servs., Div. of Child Support Enforcement, 22 Va. App. 684, 692, 472 S.E.2d

668, 672 (1996). Given the age of the children and the parties' agreement, the trial court did not abuse its discretion.

The husband contends that the court erred in identifying and valuing the parties' personal property. He complains that the list of personal property is incomplete and that some values assigned to the various items of personal property are wrong. The record consists primarily of various lists with values assigned by the parties. Having reviewed these, we find that there is evidence to support the findings made by the trial court.

During the divorce proceedings, the parties agreed that the wife would receive the net proceeds from the sale of their residence. The amount, $69,000, was not to be considered by the trial court in making an equitable distribution under Code § 20-107.3. In her cross-appeal, the wife alleges the trial court erred by considering that amount while determining equitable distribution. The court designated the entire amount as separate property, and did not include it in the marital estate. The agreement of the parties was not introduced, so we do not know the precise wording of it. The record presents only the characterizations of the agreement that were made by the witnesses. The trial court acknowledged it was aware of the agreement but noted that it was only considering the $69,000 when explaining why it did not consider the wife's new mortgage debt under Code § 20-107.3(7) or considering the $69,000 under Code § 20-107.3(10). Considering the limited manner in which the

trial court did consider the property, we cannot say that it violated the terms of the agreement.

The wife contends that the court erred in failing to award her attorney's and expert witnesses' fees. The record shows that the matter was considered fully by the court. It had previously made an award to the wife of partial attorney's fees. It did award her costs to include the costs of court reporters. In denying further attorney's fees after decreeing equitable distribution, the court was aware that the wife would have assets of approximately $200,000. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). The court's goal is to make a determination which is reasonable under all the circumstances. See McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985). We cannot find that the denial of additional attorney's fees was an abuse of discretion.

After the court had announced its decision by letter opinion but before the final order had been entered, the wife moved the court to amend the award of support. She alleged that the husband had indicated that he would not pay the lump sum award of $127,000. She requested the increase to "bridge the gap" in income until he paid the award. The trial court had awarded permanent spousal support of $2,250 per month. In response to the motion of the wife, the court increased the support to $3,477 and designated it as permanent support. The husband objects to

the award being permanent and argues the increase should only have been awarded <u>pendente</u> <u>lite</u> until the husband pays the lump sum. The husband does not object to the increase if it is limited to the period when the lump sum award is not paid. We find that the court erred in granting the increase as a permanent award. To the extent the award exceeds the temporary relief requested in the motion, it is error. The case is remanded for entry of an order that terminates the increased portion of spousal support upon payment in full of the lump sum award. In all other respects, the trial court is affirmed.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>